## ALFRED CRAMER

### v.

## JAMES MOONEY.

[Filed November 22d, 1899.]

1. A contract for sale of lands, though signed only by the vendor, will not be held to be unilateral on the contention of the assignee of the vendee, when it appears that the vendee has transferred all his right to his assignee, and that the assignee has been accepted by the vendor as the purchaser, has paid nine-tenths of the purchase-money, has entered into possession of the lands and rented them, has tendered a small balance of the purchase-money, and demanded the clearing of the title and the delivery of a deed, his right to which was admitted by the vendor.

2. Such acts of part performance are sufficient to establish a mutual contract between the vendor and the assignee.

3. When time of performance is not specified by the contract of sale, and the parties arrange for the removal of an encumbrance prior to performance, without naming a specific day, the removal within a reasonable time is a sufficient performance.

4. If, after such an arrangement, one of the parties claims that a subsequent agreement fixed a specific day for performance, the party so asserting the new arrangement must carry the burden of proving it.

Cramer v. Mooney.

On bill, answer and proofs.

The complainant files this bill against James Mooney, the assignee of a contract for the sale of two lots of land in Stockton township, in Camden county, to compel specific performance of the contract, by a decree that the defendant accept a deed and pay the balance of the purchase-money, and that he be restrained from prosecuting his suit to recover the portion which he has already paid.

The agreement is in the words and figures following :

"This Agreement made the first day of April, in the year of our Lord one thousand eight hundred and ninety (1890), witnesses, That Alfred Cramer, has sold unto John M. Labbree, a piece of ground situate on the North side of Adams Ave., in the town of North Cramer Hill, County of Camden, and State of New Jersey, being lots Nos. Fourteen (14) and Fifteen (15) as laid out and numbered in Block 0 on a plan of the said town (a copy of which said plan is on file in the office of the Register of Deeds of the County of Camden), for the sum of one thousand dollars ($1,000) to be paid by monthly installments of not less than Fifteen dollars per month, with lawful interest after six and one-half months from this date, the entire sum to be due in Forty months from this date. The above named lots extend from the North line of Adams Avenue two hundred (200) feet in depth to the South line of Delaware Avenue. It is expressly understood by and between the parties to this agreement that no building shall be erected on the above described premises that shall cost less than two thousand dollars. Alfred Cramer, by B. C. Rudderow, Atty. 1890, April 1st, Received to this date seventy dollars, Alfred Cramer, by B. C. Rudderow, Atty.

| 1890. | Jun | 30. | Received | Fifteen dollars, |
| | | | | Alfred Cramer, by B. C. Rudderow, Atty. |
| " | July | 29th. | " | Fifty dollars, |
| | | | | Alfred Cramer, by B. C. Rudderow, Atty. |
| 1890. | Oct. | 21st. | Received | Fifty dollars, |
| | | | | Alfred Cramer, by B. C. Rudderow, Atty. |
| 1891. | Feby. | 3. | " | Fifty dollars, |
| | | | | Alfred Cramer, by B. C. Rudderow, Atty. |
| 1891. | June | 18. | " | Fifty dollars, |
| | | | | Alfred Cramer, by B. C. Rudderow, Atty. |
| " | Nov. | 10. | " | Fifty dollars, |
| | | | | Alfred Cramer, by B. C. Rudderow, Atty. |
| 1892. | Jany. | 15. | " | Fifty dollars, |
| | | | | Alfred Cramer, by B. C. Rudderow, Atty. |
| " | June | 15. | " | Fifty dollars, |
| | | | | Alfred Cramer, by B. C. Rudderow, Atty. |

| 1892. | Oct. | 24. | Received | Fifty dollars, |
| | | | | Alfred Cramer, by B. C. Rudderow, Atty. |
| 1893. | June | 7. | " | Fifty dollars, |
| | | | | Alfred Cramer, by B. C. Rudderow, Atty. |
| 1894. | Jany. | 16. | " | Fifty dollars, |
| | | | | Alfred Cramer, by B. C. Rudderow, Atty. |
| " | August 27. | | " | Fifty dollars, |
| | | | | Alfred Cramer, by B. C. Rudderow, Atty. |
| 1895. | May | 23. | " | Fifty dollars, |
| | | | | Alfred Cramer, by B. C. Rudderow, Atty. |
| " | Nov. | 29. | " | Three hundred and fifteen dollars, |
| | | | | Alfred Cramer, by B. C. Rudderow, Atty. |

"CRAMER HILL, July 15, 1890.

"For value received I do hereby transfer all my rights, title and interest. of this within agreement to James Mooney.

"JOHN M. LABBREE."

A copy of this agreement was delivered to Labbree, who at once began to pay the installments of the purchase-money. By July 15th, 1890, he had paid $85 on account, and on that date he assigned his interest in the contract to the defendant, James Mooney, who accepted the transfer, and thereafter continued to pay various installments of the purchase-money until the last payment on November 29th, 1895, by which time he had paid $915, making the total of the payments by both Labbree and Mooney to be $1,000. These payments appear to have been made generally on account of the purchase-money, and were none of them at the time of payment specifically applied to the satisfaction of either the interest or the principal of the purchase-price referred to in the agreement.

The complainant alleges that Mooney took possession of the lots in question and received the rents of the property, and that he still has possession. Mooney denies this, and alleges that the land is unimproved, unenclosed building lots, and that he had not placed any improvement thereon. The proofs show, substantially without dispute, that Mooney collected rents from his tenant in possession of the premises for several years, the latest in October, 1896. The defendant is, in fact, in possession of the premises by his tenant.

Cramer v. Mooney.

The bill further states that the complainant had precedently to the contract of sale made a mortgage for $9,000 upon a large tract of land adjacent to the two lots in question, and that by the description in the mortgage it overlaid about thirty-five feet of the rear end of those lots; that on October 24th, 1896, the defendant offered to pay the balance of the purchase-money due at that time, but refused to accept a deed until the portion of the lots covered by the mortgage was released from its lien, and that thereupon the complainant assured him that he would obtain such a release or refund the purchase-money. The answer admits this offer, and that the defendant

"refused to pay said money and accept said deed unless a release was obtained by the said complainant, and thereupon said complainant offered or promised to obtain said release at once, or otherwise to return the purchase-money."

The substance of the dispute in this cause is found in the differences of the parties touching the action of the complainant in obtaining the release in question under his agreement to secure that release. It is admitted by the answer that the complainant proffered himself ready to obtain this release, and that the defendant accepted this offer. The answer says the complainant promised to obtain the release "at once," but the proofs show that in the arrangement of the complainant with Mr. Hoosey, acting for the defendant, he did not agree to get the release at any definite time. There is really no dispute that before counsel was employed, the parties had agreed that the complainant should obtain the release, and that the deed should then be delivered without naming any specific day for the delivery. Nor is there any denial that under this arrangement the complainant proceeded to obtain and finally secured the release. Nor that he has invited the defendant to accept the delivery of the deed and release and to pay the balance of the purchase-money. The point of contention lies in the allegation of the defendant that after the arrangement to secure the release, &c., and thus perform the contract, the complainant, at interviews with the defendant's counsel, admitted his inability to carry out his contract and agreed to obtain the release, &c., by the 27th day of Novem-

ber, or to refund the purchase-money paid. The complainant strenuously denies that he ever admitted that he could not carry out the contract and that he made any agreement to refund as stated, insisting that he never agreed to get the release by any specified day; that though unavoidably delayed several weeks in securing it, he always expected to get it, and was continuously seeking to procure it; that the only refunding talked of was in case he should be unable to get the release.

The testimony sustaining the defendant's contention on this point, is solely that of the defendant's counsel. A memorandum of the amount due, if there was a refunding shown by the complainant to defendant's counsel, is submitted as supporting the claim that a refunding was promised. The complainant admits that he did show such a memorandum, but declared that he exhibited this and also a certified check to assure the counsel that he was acting in good faith, and was able if he failed to get the release, to return the money. These incidents took place while the complainant was seeking to obtain the release, and during the period when his inability to secure an interview with the holder of the mortgage prevented the completion of the contract.

The defendant, on November 24th, 1896, while the complainant was yet seeking to obtain the release under the arrangement made between them, but before he secured it, brought suit for the recovery of the portion of the purchase-money paid. On December 15th, 1896, the complainant, who had obtained the $9,000 mortgage to be assigned to a friendly holder, procured the portion of the lots in question which the mortgage covered to be released, and on December 21st, 1896, sent a letter by mail to the defendant, notifying him that the deed was ready for delivery at his lawyer's office. In the early part of March, 1897, the complainant personally tendered to the defendant a deed for the lots.

The defendant accepted none of these offers to carry out the contract of sale and persisted in the prosecution of his suit, and on the 18th day of March, 1897, the complainant filed his bill in this cause to restrain the prosecution of the defendant's suit and to enforce performance of the contract

*Mr. Martin V. Bergen, Jr.,* and *Mr. Martin V. Bergen,* for the complainant.

*Mr. Thomas B. Harned,* for the defendant.

GREY, V. C.

The first point taken by the defendant is his contention that the contract of sale is a unilateral agreement, which the defendant may, if he desires, enforce against the complainant, but which the complainant may not compel the defendant to observe.

Whatever might have been the construction of the contract standing barely upon its expressed terms, the subsequent circumstances and the dealings of the parties with the subject have established a mutual contract for the sale and purchase of the lots in question. By the terms of the written contract the complainant who signed it declared that he had sold the lot to Labbree, naming no date for the delivery of the deed. Labbree, who had not signed it, began at once to make payments on account of the purchase-money. When the assignment to the defendant, Mooney, was made, he was accepted by the complainant as the purchaser in the place of Labbree. The defendant continued these payments for some four years until he had paid $915. With complainant's assent, the defendant took possession of the lots agreed to be sold and dealt with them as his own. He tendered the balance of the purchase-money, and demanded a deed from the complainant, who admitted that the defendant was the purchaser, and both then agreed that the complainant should obtain a release of the premises from the mortgage and should then deliver the deed to the defendant or to his appointee.

These dealings of the defendant with the complainant touching the premises in question have also taken this case out of the class where a contract of sale is sought to be enforced by the vendor against a mere assignee having no contract with the vendor and not in privity with him. The defendant has not only paid to the vendor complainant the greater part of the purchase-money, but has actually entered into possession of the

premises, and tendered the balance of the agreed price and demanded a deed and the clearing of the title, and the complainant has accepted him as the purchaser and tendered him a deed and now files his bill to enforce payment. These acts of part performance are sufficient to establish a contract between the complainant and defendant which would be enforced in equity, even if entirely by parol. *Green* v. *Richards, 8 C. E. Gr. 33;* affirmed on appeal, *8 C. E. Gr. 537.*

The demand by the defendant for his deed under the agreement was in and of itself an affirmation by him of that agreement as binding upon him. *McTague* v. *Sea Isle City Building Association, 28 Vr. 429.*

The defendant further insists that complainant failed to perform or tender timely performance. This is put upon two grounds—*first,* that there was no such prompt action by the complainant in completing the contract as was due from him; and *secondly,* that there was a special agreement made between defendant's counsel and the complainant naming a specific day for performance, with which the complainant failed to comply.

In this state time is not held to be of the essence of an agreement to convey lands, unless the parties have expressly so stipulated, or it follows by necessary implication from the nature of the transaction. *Dynan* v. *McCulloch, 1 Dick. Ch. Rep. 14;* affirmed on appeal, *1 Dick. Ch. Rep. 608.*

In the original written contract in this case no time is fixed for the delivery of a deed. By fair intendment it is deliverable upon the final payment of the purchase-money. So far as the element of time is concerned, it appears to have been laid aside in this matter. The contract called for payment by monthly installments. Sometimes these were anticipated, sometimes long overdue. The contract called for payment of interest on unpaid purchase-money. No interest was paid at any time. In November, 1895, $190 of purchase-money is admitted to have become due, but neither payment nor tender was made until October, 1896. Nothing either in the nature of the property dealt with, or in the declared objects of the parties, indicated an intent to make the time of performance an essential element,

either of the original contract or of the subsequent agreement whereby the defendant was accepted as purchaser, let into possession, and partial payments were accepted from him. The complainant had no other duty as to performance than to deliver a deed with a clear title when the defendant should pay or tender the last of the purchase-money. There is no showing of any attempt to make such final payment, until the latter part of October, 1896, after a year's delay since the last payment.

The special agreement set up by the defendant fixing a named day for the performance of the refunding of the purchase-money, may be better understood upon examining the arrangements made by the parties as to the performance of the contract, prior to the time when this special agreement is alleged to have been made. The defendant, in the fall of 1896, concluded to complete the contract by paying the $190 yet due. He saw the complainant's agent, and also sent his friend, Mr. Hoosey, to see the agent for that purpose. When the agent was asked if the lot was clear, he stated the facts as to the lien of the blanket mortgage. The defendant testified that they made up their minds that they would not take the deed and pay the balance of the purchase-money until the lot was clear. Mr. Hoosey, who called on the complainant's agent at the defendant's instance, testifies that the complainant's agent declared that he would get a release of the lot from the lien of the mortgage; that the agent did not fix any time, but said he "would get it soon." "He didn't give no definite time in regard to when it could be cleared." The parties appear to have accepted this situation, and to have waited for a time for the complainant to get the release, and, becoming impatient, Mr. Mooney, early in November, 1896, employed counsel.

The rule regarding the rescission of a contract for sale of lands, because of the discovery of an unknown outstanding mortgage upon the premises, has been declared by the court of appeals in affirming *Oakey* v. *Cook, 14 Stew. Eq. 352.* The time to rescind the contract was at once that the existence of the mortgage was discovered. None of the parties desired at that time to rescind the contract because of the mortgage. The undis-

puted testimony in this case shows that the mortgage covered but a small fraction of the lot, one thousandth part is the quantity named. It is common practice to clear the title at the time of performance, though it may not be clear when the contract is made. No reason appeared why a release could not be had and the contract for sale carried out, and the parties accepted this mode of settlement. The complainant under this arrangement began his efforts to secure the release. As nearly as the proofs show, this was in the last week of October, 1896. Up to this time, through all the facts were known, there appears to have been neither thought nor suggestion that there was any fraudulent act or purpose on the part of the complainant in the transaction. Nor does any of the testimony indicate that the complainant at any time acted with a fraudulent intent. He testified that he always supposed there would be no difficulty in obtaining a release of the lots from the lien of the blanket mortgage, and considering the almost infinitesimal extent of its lien, he appears to have been justified in that belief. The complainant, however, when he set about securing the release, did find trouble in procuring it. There was delay in getting access to the holder of the mortgage because of his sickness and afterwards an indisposition on his part to discharge the lots. These reasons interfered with the success of the complainant in his efforts to procure the release. A period of several weeks intervened, during which the complainant was constantly endeavoring to obtain the release of the corner of the lot from the lien of the blanket mortgage, under the arrangement above stated. This plan did not name any specific day when the lot could be cleared and the deed delivered, and compliance within a reasonable period would have satisfied the terms of the arrangement.

Mere delay in the performance of this contract (where the acts of the parties show that the contract could be satisfied in all its terms by performance within a reasonable time) did not of itself entitle the defendant to rescind the contract. The court of appeals, in a case somewhat like this, refused to support an action brought to recover the purchase-money. *McTague* v. *Sea Isle City Building Association, 28 Vr. 428.*

It was at this stage of the matter the defendant employed his counsel, and it is asserted that in response to a demand by the latter that the complainant should clear the title, the complainant, who had theretofore named no specific day when he would obtain the release, agreed with the defendant's counsel that if he did not obtain the release by Friday, November 27th, 1896, he would on that day return the portion of the purchase-money paid, with interest.

Up to this period no circumstance appears which made time of the essence of the performance, and the establishment of the fact of the change from performance within a reasonable period to performance on a named day, depends wholly upon the proof of the making of the alleged agreement by the complainant that he would conclude the matter on the 27th day of November or refund the price. The defendant sets up this alleged change of arrangement, and with the introduction of this new element into the case the defendant must carry the burden of proving it. The only testimony narrating or supporting the allegation of this agreement to clear the title or refund on a named day is that of the defendant's counsel. The complainant, who is alleged to have made the agreement, explicitly and circumstantially denies it. The attending circumstances do not definitely support either statement. The complainant continued to endeavor to get the release and explained the reasons which delayed his success. The counsel for the defendant advised the arrest of the complainant for fraud and brought suit against him for the recovery of the part of the purchase-money paid. The defendant does not appear to have delivered up or tendered the possession of the premises to the complainant at any time.

The testimony offered for the defendant does not carry the burden of proof to show that there was a change of the contract whereby the complainant agreed to get a release by a named day or to refund the price. This change having failed of proof, the parties stood under their former arrangement as to time for completion of the contract. There is neither allegation nor proof that the length of time actually taken in obtaining the release of the mortgage, which was from October 26th, 1896, to Decem-

ber 15th, 1896, was an unreasonable period, in view of the diffi-
culties which interfered.    Nor are any circumstances shown which
made performance at the latter date or when tender was made
either injurious or unreasonable.    The complainant is shown to
have diligently pursued the matter from the time when the
arrangement was made that he should secure the release.    He
was unable at first to induce the holder of the mortgage to give
the release, but finally obtained the whole mortgage money to be
raised and the mortgage to be assigned to a friendly holder, for
the express purpose of getting from him the release of the small
corner of the lots in question which it covered.    This was done
on December 15th, 1896, and was, under the circumstances of
the case, a fair compliance with the terms of the arrangement
which had been made before the defendant employed counsel,
and left the defendant without reasonable cause to rescind the
contract or to bring suit to recover the purchase-money.    He
should pay the balance of the purchase-money and accept his
deed, and should be restrained from prosecuting any suit to
recover the purchase-money paid.

I will advise a decree in accordance with the views above
expressed.